WO

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | ) |
| Plaintiff, | ) |
| v. | ) CR 09-658 TUC DCB (CRP) |
| | ) **O R D E R** |
| Armando Rene Padilla, and Daniel Thomas, | ) |
| Defendant, | ) |

On March 3, 2010, Magistrate Judge Pyle issued three Report and Recommendations. He recommended this Court sever the two Defendants' cases for trial (R&R (doc. 93)), to find there was probable cause to search Defendants' car, but suppress the evidence seized because it was an illegal stop (R&R (doc. 91)), and to deny suppression of Defendant Thomas' self-incriminating statements (R&R (doc. 92)). The motions were all filed by Defendant Thomas, but Defendant Padilla joined in the Motion to Suppress the Evidence. The parties were given 14 days to file objections to the R&Rs, which have now been filed along with responses. The matters are fully briefed. The Motion to Suppress Evidence has been set for a *de novo* evidentiary hearing, but the Court adopts the findings of fact and conclusions of law set out in the R&R to sever the cases for trial, unless the Government presents the more limited version of Defendant Padilla's statement as it proposed in the Objection to the R&R. The Court will follow the Magistrate Judge's recommendation to deny suppression of Defendant Thomas' self-incriminating statements.

On March 27, 2009, Tohono O'odham Police Officer Henry[1] stopped a 1984 Buick Le Sabre on State Route 86 near Sells, Arizona, for a traffic violation. The driver was Armando Padilla. Daniel Thomas was the passenger. During the traffic stop, the officer observed a large square object covered by a blanket in the back seat. He smelled a moderate odor of marijuana and the K-9 officer alerted to the object and the trunk area of the car. A search of the vehicle found five backpacks of marijuana containing ten bales that weighed 110 kilograms. (Complaint filed 3/30/2009.)

Both Defendants were arrested, waived their Miranda rights and gave incriminating statements against themselves and each other. Defendant Thomas argues that the waiver of his Miranda rights was not made voluntarily, knowingly, and intelligently because he was suffering from severe migraine headaches and nosebleeds, he was interviewed in a threatening manner, and that his physical distress was compounded because he suffers from a brain injury. Defendant Thomas argues that his statements must, therefore, be suppressed. He argues that his case must be severed from Codefendant Padilla because, if Padilla does not testify at trial, use of Padilla's inculpatory statement violates his right of cross-examination protected by the Confrontation Clause of the Sixth Amendment.

The Magistrate Judge found that the redactions proposed by the Government did not cure the Confrontation Clause problem and recommended granting severance. The Magistrate Judge found there were no coercive measures taken by police, there was no evidence of physical distress during the period of detention, and Defendant Thomas' mental capacity is adequate for him to have knowingly and intelligently waived his rights. The Magistrate Judge recommended against suppressing Defendant Thomas' statements.

STANDARD OF REVIEW AND CONCLUSION

The duties of the district court in connection with a Report and Recommendation of a Magistrate Judge are set forth in Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). The district court may "accept, reject, or modify, in whole or in part, the

---

[1] Officer Henry is authorized to enforce both tribal and state law.

findings or recommendations made by the magistrate judge." Fed.R.Civ.P. 72(b), 28 U.S.C. § 636(b)(1). Where the parties object to a Report and Recommendation, "[a] judge of the [district] court shall make a *de novo* determination of those portions of the [Report and Recommendation] to which objection is made." 28 U.S.C. § 636(b)(1); *see Thomas v. Arn,* 474 U.S. 140, 149-50 (1985). When no objections are filed, the district court need not review the Report and Recommendation *de novo*. *Wang v. Masaitis,* 416 F.3d 992, 1000 n. 13 (9th Cir.2005); *United States v. Reyna-Tapia,* 328 F.3d 1114, 1121-22 (9th Cir.2003) (en banc). Any objections not raised are waived and will not be addressed by the Court. *See* 28 U.S.C. § 636(b)(1)(A) (objections are waived if they are not filed within fourteen days of service of the Report and Recommendation); *see also*, *Britt v. Simi Valley Unified School Dist.,* 708 F.2d 452, 454 (9th Cir. 1983) *overruled on other grounds*, *Reyna-Tapia*, 328 F.3d at 1121-22.

## MOTION TO SEVER

During the interview of Defendant Padilla, he stated that on March 27, 2009, in the afternoon Thomas called him and asked him to come to Sells to move something. When Padilla arrived he called Thomas from a Shell Service Station, and Thomas instructed him to drive to his house. At Thomas' house, Thomas told Padilla that he had some stuff in his house he needed to move to San Pedro and leave it by the road. Padilla told Thomas that he was only going to take it there and that was it. Thomas agreed and then went in his house and brought gunny sacks tied with rope from his house and loaded them in the trunk of Padilla's car. Padilla did not help Thomas load the marijuana, but knew it was marijuana because he could smell it. After Thomas finished loading the car, they left heading towards State Route 86. Padilla passed a police vehicle going in the opposite direction. He saw it turn around and catch up to them, and then it stopped them.

The Government proposes to redact Thomas' name and replace it with either "a person" or "the person." There is no Confrontation Clause violation when "the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). The redacted confession must

not reference the codefendant by implication, such as by "replacing a name with an obvious blank space or symbol or word such as 'deleted.'" *Gray v. Maryland*, 523 U.S. 185, 189 (1998). The Magistrate Judge correctly found that the Government's proposed redactions are "exactly like the statement in *Gray*, where deletions to the statement obviously refer to the defendant . . . ." (R&R at 3.) "The redactions clearly implicate another unnamed person in the offense. Only two people will be at trial. . . . It will be the inescapable conclusion of jurors that Defendant Thomas is 'that person' in the redacted statement." *Id.*

The Government disagrees. It argues this case is like *Richardson*, where the confession can be redacted to omit any reference to the codefendant but refer to a third-party. Without explaining why, the Government believes that the jury will conclude "the person" referred to in Padilla's statement is a third person, not Codefendant Thomas. The only evidence of a third person is in Thomas' statement, which includes a reference to Lou.

In *Richardson*, there were three defendants but one was a fugitive at the time of trial. The confession at issue in *Richardson* was redacted to omit all reference to the other co-defendant, but named and included statements regarding the conduct of the other fugitive defendant. In *Richardson*, it was obvious from the statement itself that it pertained to the confessing codefendant and a third person, who was not one of the codefendants present at the trial. Here, the redacted statement does not introduce such a third person nor is there any reason for the jury to assume there is a third person involved in this case. Except for Thomas' own self-serving statements about Lou, there is no evidence whatsoever of a third person. Only if Thomas' confession is admitted into evidence, including his statement about Lou, will the jury have any reason to believe "the person" talked about by Codefendant Padilla is not Thomas.

In its Objection to the R&R the Government submits that "the redacted statement will not be introduced into evidence at trial." (Objection at 7.) Immigration and Customs Enforcement (ICE) Special Agent (SA) Mase will testify that: "Padilla received a call to go to a house to move a load to San Pedro and leave it by the road; Padilla went to that house and agreed to transport the load; after the sacks of marijuana were loaded in his vehicle,

- 4 -

Padilla drove away and was subsequently stopped by Officer Henry." *Id.* at 6. SA Mase's proposed testimony is much more limited than the redacted confession proffered to Judge Pyle. It focuses on what Defendant Padilla did as compared to what he said about the other person. For example, in the redacted statement presented to Judge Pyle, Padilla says "the person" called him, "the person" told him to come to "that person's" home, where "the person" then loaded the marijuana into Padilla's vehicle and "the person" told Padilla where to take it, etc. The redacted statement makes it clear that according to Padilla there were two people involved in the drug transaction, himself and the other person, who the jury will have to conclude is Codefendant Thomas.

The Magistrate Judge correctly held that the inculpatory statement made by Padilla as redacted by the Government, required severance of the trials under Federal Rule Criminal Procedure 14, which precludes joinder under Rule 8 of defendants who are alleged to have committed the same crime, if the codefendants are prejudiced by the joinder. Joinder is, however, favored by the courts because of judicial economy and efficiency. *Parker v. United States*, 404 F.2d 1193, 1196 (9th Cir. 1968). Therefore, the Court finds that Codefendants may be joined for trial if Padilla's inculpatory statement is presented by the more limited testimony of SA Mase as proposed by the Government in its Objection to the R&R.[2] The Court will give a limiting instruction.

## MOTION TO SUPPRESS THOMAS' STATEMENT

SA Mase interviewed Thomas twice. The first interview was around 2: 26 a.m., subsequent to the Padilla interview. SA Mase was told by Thomas that the night before some Mexicans came to his house with stuff. Thomas' partner, Lou, talked to them. Lou called Padilla. SA Mase did not believe Thomas was telling the truth, and he terminated the interview. While he was placing Thomas back in the holding cell, Thomas told SA Mase that he knew smuggling was a big problem on the Reservation, and he could help by providing information on people who were smuggling.

---

[2] The Government's Objection was filed on March 16, 2010. Defendant has not objected to the more limited presentation by SA Mase of Padilla's inculpatory statement.

The next day, SA Mase again interviewed Thomas. This time Thomas gave a written statement as follows: 1) he returned home on March 26, just before sunset and was told by Lou that five Mexicans had stopped by and told him they needed a ride with five packs of marijuana. Lou told Thomas what he had to do. Padilla called later that evening and talked to Lou. Thomas did not know what they talked about. The next day, March 27, Thomas went home at 5:00 p.m., and around 6:00 p.m., Padilla called and told Thomas that he was coming over to the house. When Padilla got there, around 8:00 p.m., both Thomas and Lou went outside to say "hello." Thomas went inside the house and stayed there while the Mexicans loaded the marijuana in the vehicle. Around 9:00 p.m., Lou asked Thomas to go with Padilla in the car to take it to a dirt road by San Pedro and drop it off. Thomas said he made a "dumb judgment" by getting into the car, and 30 minutes later they were stopped by Officer Henry.

Defendant Thomas seeks to suppress the second written statement because he suffers from a brain injury that compounded the stress from the arrest, sleep-depravation, and lack of food, by causing him to have a migraine and nose bleed, so that the circumstances of the interview were coercive, and given his mental capacity he could neither comprehend the importance of his Miranda rights nor retain this information from when he was Mirandized at 2:26 a.m. until the second interview at 11:00 a.m. Consequently, Thomas' confession was not made voluntarily, knowingly, and intelligently.

Defendant Thomas testified at the suppression hearing that the stress of the arrest triggered a migraine and nose bleed, that he was sleep-deprived and hungry when he was interviewed the second time. He testified that SA Mase was hostile and aggressive. He testified that he was not focused on the right he was being asked to waive nor the consequences of the waiver. (TR 2/2/10 at 39-43.)

Defendant's expert, Dr. James Allender, a neuropsychologist, testified that Thomas' brain injury caused a degree of cognitive impairment, which under stress, would manifest more symptoms. (TR 2/2/10 at 207.) He testified the symptoms could include problems with attention, concentration, and memory. *Id.* at 206. In combination with stress and

- 6 -

sleep-depravation, Thomas' brain injury might impair his attention and concentration, and that poor attention in turn impairs the ability to process information. *Id.* at 220. Thomas would be more likely to lose focus and be more vulnerable to distraction. *Id.* at 221. He would have a reduced ability to knowingly and intelligently waive his rights given the clinical picture developed during testing and follow-up interviews with family members. *Id.* at 224.

While the Magistrate Judge recognized the picture Dr. Allender painted might be accurate for someone with a traumatic brain injury, here, there was other evidence which established that Thomas' memory and intelligence was adequate for him to voluntarily, knowingly, and intelligently waive of his Miranda rights. First, the Magistrate Judge correctly noted that the eight to nine hour lapse of time between the first interview, when Thomas was advised of his Miranda rights and waived them, and the second interview did "not render Defendant Thomas's confession inadmissible." (R&R at 12 (citing *People of Territory of Guam v. Dela Pena*, 72 F.3d 767, 769 (9th Cir. 1995) (15 hour interval did not render confession inadmissible); *Maguire v. United States,* 396 F.2d 327, 331 (9th Cir. 1968) (warnings three days before second officer interrogated defendant appraised defendant of rights); *Puplampu v. United States*, 422 F.2d 870 (9th Cir. 1970) (*per curiam*) (statements were admissible were Miranda rights were given two days earlier)). The Magistrate Judge noted that in *Dela Pena*, like this case, the officers reminded the defendant of the earlier warning. (R&R at 12.)

As to Defendant Thomas' brain injury and whether he is mentally impaired, the Government produced Dr. Richard Hinton, a psychologist, who testified that even if Defendant Thomas had a deficit in attention and concentration, given his educational and professional background, such a deficit could not be considered a significant impairment. Dr. Hinton testified that Thomas is a person of average intellectual ability and not unusually susceptible to psychological coercion during an interview. *Id.* at 9.

The Magistrate Judge found:

> Subsequent to his injury Defendant Thomas has shown that whatever mental deficiency he experiences, it is not a significant impairment for him.

- 7 -

Defendant Thomas graduated from high school. Subsequent to his brain injury, Defendant Thomas attended college and is 4 or 5 credits short of a bachelor's degree (TR at 1/26/10 at 120.) On cross examination, Defendant Thomas admitted he applied for some grants and received them. (TR 2/2/10 at 46.) On cross examination, [Thomas' mother], Jeanette Thomas testified that Defendant Thomas was also good in car repairing and he did that for some of his friends. (TR 2/2/10 at 27.) Subsequent to his brain injury, he also held several reputable jobs with the Nation, including a manager position at a Shell Service Station. (TR 2/2/10 at 28.) On cross examination, Defendant Thomas admitted that from 2004 to 2009 he served as one of the five community representatives for Tecate Village where he was required to make important decisions for the village. (TR 2/2/10 at 47.) All of these educational and professional achievements happened after the injury and have taken place up to 2009.

(R&R at 9-10.)

To be admissible, the confession must have been voluntary rather than caused by coercion, intimidation, or deception. (R&R at 10 (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). The Magistrate Judge correctly found that even with impairments from his brain injury, Defendant was of average intelligence and not especially susceptible to coercion, intimidation, or deception, and anyway there was no evidence of coercion, intimidation, or deception by law enforcement.

Defendant Thomas was arrested around 9:00 p.m., he arrived at the Sells station around 9:45. (R&R at 2.) He was in a holding cell from then until around 2:26 a.m. when SA Mase conducted the first interview. *Id.* at 3. He was placed back in his cell around 2:45. *Id.* at 5. At about 4:00 a.m., he was transported to a Tohono O'odham Police Department (TOPD) facility. *Id.* He was booked in there, which included completing a medical questionnaire and medical history, where Thomas informed the Tohono O'odham officer that he had a traumatic head injury, high blood pressure and respiratory problems which required using an inhaler. *Id.* He was in his cell by about 4:10 a.m., *id.*, and given breakfast between 7:30 and 8:00 a.m, *id.* at 6. He was returned to ICE at the Sells station around 10:00 am. *Id.* SA Mase conducted the second interview around 11:00 a.m. *Id.* Not once during this time, including the completion of the medical questionnaire, did he complain to anyone that he was suffering from a migraine nor did anyone see signs of a nose bleed. At the time of the second interview, he had eaten breakfast and had ample opportunities to rest and/or sleep for several hours at a time during the night. (R&R at 2-6.)

- 8 -

The Court agrees that there is no evidence of coercion, intimidation, or deception by law enforcement. The waiver was made voluntarily. Second, the waiver must be made knowingly and intelligently "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. (R&R at 10 (citing *Moran*, 475 U.S. at 421)).

Like the Magistrate Judge, "[t]his Court is not convinced that Defendant Thomas's brain injury impeded his ability to knowingly and intelligently waive his rights. By the testimony of Defendant's own psychologist, Defendant is only slightly below average in his working memory and at least average in other tested areas of cognitive testing. Furthermore, the other evidence presented at the hearing shows Defendant is capable of knowingly and intelligently waiving his rights." (R&R at 16.)

In his objection to the R&R, Defendant Thomas admits that a failure to re-administer Miranda warnings does not automatically render the statements inadmissible. (Objection at 3 (citing *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1130 (9th Cir. 2005)). "There is no *per se* rule mandating that a suspect be re-advised of his rights." *Id.* (citing *Rodriguez-Preciado*, 399 F.3d at 1128)). "Instead, courts must examine the totality of the circumstances to determine whether a defendant could have reasonably believed that the previously-administered warnings were still effective in light of the changed circumstances." *Id.* (citing *Rodriguez-Preciado*, 399 F.3d at 1128-29)). "One aspect of the analysis is whether there were intervening events which might have given the defendant the impression that his rights had changed in a material way." *Id.* (citing *Rodriguez-Preciado*, 399 F.3d at 1129)).

Without any legal support, Defendant argues that termination of the first interview by the questioning agent is an intervening event that should be considered under the totality of the circumstances. Without any explanation, as if it is a logical conclusion, the Defendant summarily argues: "Mr. Thomas could reasonably have believed that the earlier appraisal of rights was no longer effective if the agent himself terminated all questioning." The Court does not see why this event would give a defendant the impression that his rights had

changed in a material way in respect to a subsequent interview, especially where as here, the subsequent interview was initiated by the same officer, who asked the defendant if he still understood his rights and still agreed to waive them.

The Defendant argues that this reminder was insufficient because unlike *Dela Pena* defendant was not reminded of his right "by reviewing with him the card he had initialed the evening before" and unlike *Rodriguez-Preciado*, he was not given the card reciting the Miranda warnings to read. The question is whether, given the totality of the circumstances, Thomas could have reasonably believed that the previously-administered warnings were still in effect in light of any changed circumstances. A mere eight or nine hours had passed, and the same officer who had cut off the first interview initiated the second interview. The Court finds that the general inquiry into whether Thomas remembered these rights and still agreed to waive them, had to be understood by him to pertain to his Miranda rights. There were no changed circumstances to suggest any other rights may have come into play or that his rights had changed in some material way. The officer did not need to re-read or summarize the Miranda rights again for him to have made a knowing and intelligent waiver of them. The Magistrate Judge properly concluded that the Motion to Suppress should be denied.

**Accordingly,**

**IT IS ORDERED** that after a full and independent review of the record, in respect to the Objections, the Magistrate Judge's Report and Recommendations (docs. 92 and 93) are accepted and adopted as the findings of fact and conclusions of law of this Court.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Statements (document 29) is DENIED.

/ / / /

/ / /

/ /

/

- 10 -

**IT IS FURTHER ORDERED** that the Defendant Thomas' Motion to Sever (doc. 56) is GRANTED IN PART as to the redacted statement offered by the Government, but DENIED IN PART as to the proposed testimony by SA Mase.

DATED this 27th day of April, 2010.

David C. Bury
United States District Judge